UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| KENNETH MCBRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00491-JMS-DLP |
| | ) | |
| BARNES, | ) | |
| PHILLIPS, | ) | |
| ALLBEE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Kenneth McBride, a former inmate at Putnamville Correctional Facility ("Putnamville"), brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Sergeant Barnes used excessive force against him and that Officer Phillips and Officer Allbee failed to intervene. The defendants have moved for summary judgment arguing that Mr. McBride failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, the defendants' motion for summary judgment, dkt. [50], is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE**. Consistent with this ruling, Mr. McBride's motion for a phone conference, dkt. [59], motion for judgment, dkt. [62], and motion for assistance, dkt. [65], are **DENIED AS MOOT**.

**I.
LEGAL STANDARD**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party

must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II.
## BACKGROUND

### A. Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a standardized grievance process. Dkt. 50-1 at 2; dkt. 50-2 at 1. The purpose of the grievance process is to provide prisoners committed to IDOC with a means of resolving concerns and complaints related to the conditions of their confinement. Dkt. 50-2 at 1.

During the period relevant to Mr. McBride's complaint, the grievance process consisted of four steps: (1) attempting to informally resolve the issue; (2) submitting a formal grievance to the Grievance Specialist; (3) submitting a written appeal to the Warden or his designee; and (4) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 3. Successful exhaustion of the grievance procedure requires the prisoner to pursue all four steps of the process. *Id.*

A prisoner who wishes to submit a grievance must submit a completed Offender Grievance form to the Offender Grievance Specialist no later than ten business days from the date of the incident giving rise to the complaint or concern. Dkt. 50-2 at 9. The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within ten

business days. *Id*. If a prisoner does not receive either a receipt or a rejected form within ten business days, the prisoner shall notify the Offender Grievance Specialist of that fact and the Offender Grievance Specialist shall investigate the matter and respond to the prisoner's notification within ten business days. *Id.*

The Offender Grievance Specialist has fifteen business days from the date that the grievance is recorded to complete an investigation and provide a response to the prisoner, unless the time has been extended. *Id*. at 10. If the prisoner receives no grievance response within twenty business days of the Offender Grievance Specialist's receipt of the grievance, the prisoner may appeal as though the grievance had been denied. *Id*. at 11.

To appeal a grievance response (or lack thereof) to the Warden or his designee, the prisoner shall submit a Grievance Appeal form within five business days after the date of the grievance response. *Id.* at 12. The Warden's/designee's appeal response shall be completed within ten business days of receipt of the appeal. *Id.*

If the prisoner wishes to appeal the Warden's/designee's appeal response, the prisoner shall check "Disagree" on the appeal response and submit the completed Grievance Appeal form and any additional documentation to the Prisoner Grievance Manager within five business days of the appeal response. *Id.* at 12-13. The Offender Grievance Manager has ten business days to complete his/her investigation and submit a response to the appeal unless additional time is required to fully investigate the grievance. *Id*. at 13. The Offender Grievance Manager's decision regarding the grievance is final. *Id*. Once the prisoner receives the Offender Grievance Manager's appeal response, he or she has exhausted all remedies at the IDOC level. *Id.*

### B. Mr. McBride's Attempts to Participate in the Grievance Process

On August 10, 2020, Mr. McBride filed a formal grievance regarding the alleged incident. Dkt 54-4 at 1. Per IDOC's grievance policy, the Offender Grievance Specialist's response to Mr. McBride's grievance was due on September 1. *Id*. at 12. On August 25, Mr. McBride filed another formal grievance.

On August 28, Mr. McBride filed a "Request for Interview" form stating that he still had not received a response to his August 10 grievance and intended to write to IDOC. *Id*. at 5. That same day, Mr. McBride wrote a letter to IDOC Commissioner Robert E. Carter, Jr. stating that he had not yet received a response to his August 10 grievance, that the response was due on September 1, and that he was writing the letter to bring the matter to the Commissioner's attention "[b]efore [he] put a lawsuit in." *Id*. at 13-18.

On September 13, Mr. McBride signed and mailed his complaint initiating this matter. *See* dkt. 1 at 6. On September 15, the Offender Grievance Specialist issued his formal response to Mr. McBride's August 10 grievance. Dkt. 50-1 at 3. On September 18, 2021, Mr. McBride's complaint was received, and this matter was opened. Dkt. 1.

### III.
### DISCUSSION

The defendants seek summary judgment arguing that Mr. McBride failed to exhaust his available administrative remedies as required by the PLRA. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's

deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

Here, the undisputed evidence shows that Mr. McBride did not file a grievance appeal in compliance with the IDOC grievance policy before filing this action, and he therefore failed to exhaust his administrative remedies. *See* dkt. 50-1 at 3 (Affidavit of Chris Williams); 50-4 at 1 (Grievance History). Mr. McBride argues that the Court nevertheless should find that he exhausted his administrative remedy because he appealed "to the highest officials" by writing to the IDOC Commissioner and Indiana Governor. *See* dkt. 54 at 4. Construed liberally, Mr. McBride's argument suggests that the defendants made the grievance process unavailable to him by not responding within fifteen business days. *Id.* at 2-4. But a grievance process is not unavailable simply because the prison's response to a grievance is tardy. *See Ford*, 362 F.3d at 401 ("Illinois made a process available to Ford; he had to stick with that process until its conclusion rather than make a beeline for court just because the administrative officials gave his appeal the time needed to resolve it."). Like the plaintiff in *Ford*, Mr. McBride made a "beeline" to court as soon as the

defendants' response time elapsed. As in *Ford*, however, Mr. McBride's haste does not mean the grievance process was unavailable to him. Rather, Mr. McBride had available, remaining steps to exhaust when he did not receive a timely response to his grievance. Per IDOC's policy, if Mr. McBride did not receive a response to his grievance after twenty business days, he could have appealed the grievance as though it had been denied. But Mr. McBride did not exhaust this available process. Therefore, the Court finds that he failed to exhaust his administrative remedies before initiating this lawsuit.

Finally, although Mr. McBride has attached multiple "Request for Interview" forms that he submitted to the defendants after his Complaint was filed, *see* dkt. 54-1 at 6-8, his attempts to retroactively grieve the issues in this lawsuit are unavailing. Unfortunately for Mr. McBride, even if these exhibits demonstrated an exhaustion of the grievance process – which they do not – the Court does not have the ability to let claims proceed when the grievance process was not completed until after the action was filed. The Seventh Circuit has made clear that "that exhaustion must precede litigation." *Ford*, 362 F.3d at 398; *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions. . . until such administrative remedies as are available are exhausted.").

Accordingly, because Mr. McBride failed to exhaust his available administrative remedies prior to bringing this action, Mr. McBride's claims must be dismissed without prejudice. *Ford,* 362 F.3d at 401 (holding that "all dismissals under § 1997e(a) should be without prejudice.").

### IV.
### CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment, dkt. [50], is **GRANTED**, and the action is **DISMISSED WITHOUT PREJUDICE**. Mr. McBride's motion

for a phone conference, dkt. [59], motion for judgment, dkt. [62], and motion for assistance, dkt. [65], are **DENIED AS MOOT**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 11/1/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

KENNETH MCBRIDE
219635
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov